UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

KELLI DENISE ALLEN and
PAUL EUGENE ALLEN,                                                          Case No. 19-11843-t7

        Debtors.

## OPINION

      Before the Court are the chapter 7 trustee's objections to two claimed state law exemptions: a wage garnishment exemption claimed for the right to recover garnished wages, and a "tool of the trade" exemption for a trailer. The Court held a final hearing on the objections on June 26, 2020, and finds that they are well taken and should be sustained.

### I.     FACTS

      The Court finds:[1]

      Mr. Allen owed money to Capital One Bank for credit card charges. In February 2019, Capital One got a $6,442.38 default judgment against Mr. Allen. To collect its judgment, Capital One began garnishing Mr. Allen's wages in May 2019. For the last seven and a half years, Mr. Allen has worked as a courier for Federal Express.

      The Allens filed this chapter 7 case on August 8, 2019. Yvette Gonzales is the chapter 7 trustee.

---

[1] The Court takes judicial notice of its docket in this case and *Allen v. Capital One Bank (USA), N.A.*, Adv. no. 19-1065-t. *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.") (*abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001)).

On the petition date, FedEx had withheld about $2,630 in garnished wages from Mr. Allen's pay but had not yet sent the money to Capital One.

The Allens sued Capital One on August 16, 2019, seeking to recover the garnished wages under a preference theory. Four days later they filed their bankruptcy schedules and statement of financial affairs (SOFA). They scheduled the preference action as an asset, valued at $5,001. The Allens elected to use the state exemptions and asserted an exemption for the preference claim.

On August 30, 2019, FedEx sent the $2,630 to Mr. Allen, together with a small additional amount that had erroneously been garnished post-petition. The funds were deposited in the Allens' checking account.

The Allens amended their bankruptcy schedules on September 23, 2019. On their amended schedule B they listed the $2,630 as an "amount[ ] someone owes you."[2] On their amended schedule C they claim $1,972.56[3] of the amount as exempt under New Mexico's wage garnishment exemption, NMSA § 35-12-7.

The Allens own J&K Ventures, LLC, d/b/a Advanced Concrete Transformations (J&K), a concrete resurfacing business. Per the Allens' schedule B, J&K owns $1,425 of machinery, tools, and/or equipment and $4,025 of construction materials and supplies. On their original and first amended schedule B, the Allens valued J&K at $6,448.17. The Allens claimed that J&K was exempt.

According to the SOFA, J&K generated $1,070 in income in 2019 (through the petition date) and $2,090 in 2018. In contrast, the Allens' schedule I shows that they lose about $200 a

---

[2] This amount, though returned to the Allens prior to the amendment, was at least arguably owed to them on the petition date under a preference theory. "[T]he amount of the exemption are [ ] measured as of the date of the filing of the petition." *In re Jaramillo*, 2020 WL 1867891, at *4 (Bankr. D.N.M.) (quoting *In re Pacheco*, 342 B.R. 352, 357 (Bankr. D.N.M. 2006)).
[3] This figure is 75% of $2,630.08

month on J&K.[4] The Court will construe the discrepancy against the debtors and find that J&K, as of the petition date, generated little or no income.

The Allens also own a 1998 28-foot Pace American enclosed trailer. The trailer is not a titled vehicle. The Allens use the trailer to haul J&K's equipment, tools, and supplies to concrete refinishing jobs. The Allens assert that they, not J&K, own the trailer. The Allens value the trailer at $1,000.

On November 1, 2019, the trustee objected to some of the Allens' claimed exemptions, including the wage garnishment exemption and the exemption for J&K. The objection was fully briefed.

On April 24, 2020, the Allens again amended their bankruptcy schedules. On their amended schedule B the Allens reduced the value of J&K to $3,073.17.[5] On their second amended schedule C the Allens did not claim an exemption for J&K, but for the first time claimed $750 of the trailer's value exempt under New Mexico's "tools of the trade" exemption.

The trustee filed an amended objection to the Allens' claimed exemptions on May 26, 2020, objecting to the wage garnishment and the tools of the trade exemptions.

II. DISCUSSION[6]

B. New Mexico's Wage Garnishment Exemption.

---

[4] The Allens' schedule I is deficient. Part 2, item 8, subpart 8a, asks for monthly income "from rental property and from operating a business, profession, or farm[;] attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income." The Allens listed a negative $99.39 for each of them on this line (a total of -$198.78) but did not attach a statement. Because they own no other businesses and each of them claims an identical monthly loss, the Court finds that the loss is generated by J&K.

[5] This diminution was entirely attributable to a reduction in the valuation of the construction materials and supplies from $4,025 to $650.

[6] Unless otherwise noted, all statutory references are to 11 U.S.C.

-3-

Prepetition, FedEx had complied with a state court garnishment order and withheld $2,630 from Mr. Allen's pay. On the petition date, FedEx had yet to pay the $2,630 to Capital One.

On their amended schedules the Allens listed the garnished $2,630 as an amount owed to them, presumably because it was potentially recoverable under § 547. They also asserted that the § 547 claim was exempt under NMSA § 35-12-7, which provides in part:

> **35-12-7 Garnishment; Exemptions**
> A. Exempt from garnishment with respect to the enforcement of an order or decree for child support is fifty percent of the defendant's disposable earnings for any pay period. Exempt from garnishment in all other situations is the greater of the following portions of the defendant's disposable earnings:
>   (1) seventy-five percent of the defendant's disposable earnings for any pay period; or
>   (2) an amount each week equal to forty times the federal minimum hourly wage rate. The director of the financial institutions division [of the regulation and licensing department] shall provide a table giving equivalent exemptions for pay periods of other than one week.

The trustee objects to the claimed exemption, arguing that NMSA § 35-12-7 can only be used to shelter a portion of the debtor's wages, but not other debtor assets, from garnishment.

Chief Judge Jacobvitz addressed a similar issue in *In re Johnson*, 593 B.R. 331 (Bankr. D.N.M. 2018). In *Johnson*, the debtors traced $1,819.02 of their prepetition wages to their checking account. They claimed that amount exempt under NMSA § 35-12-7. There had been no wage garnishment prepetition. The trustee and a creditor objected, arguing that NMSA § 35-12-7 only applies to wage garnishment, not to funds held by the debtors after wages had been paid. Judge Jacobvitz reviewed the statute and the case law and concluded that NMSA § 35-12-7 only protects wages owed to the debtors by their employer, not wages after they are have been paid to the debtors. 593 B.R. at 339 ("wages deposited into a judgment debtor's bank account lose their character as wages for purposes of the New Mexico garnishment statute. As funds on deposit, they are only subject to the general property exemptions under New Mexico law.").

There was some case law supporting debtors' argument that the wage garnishment exemption "follows" the wages into their bank account. *See, e.g., In re Urban*, 262 B.R. 865 (Bankr. D. Kan. 2001); *In re Robinson*, 241 B.R. 447 (9th Cir. BAP 1999). In *Johnson*, Judge Jacobvitz declined to follow these cases.

*Johnson* was correctly decided. NMSA § 35-12-7 applies to wage garnishment, a process by which judgment creditors obtain a portion of the wages owed to a judgment debtor by a third party employer.[7] Once the wages are paid, the employer no longer owes them to the debtor and the concept of wage garnishment no longer applies to those funds. The wage garnishment exemption is not a guarantee that the exempt portion will never be taken by creditors (whether by execution, attachment, bank account garnishment, or some other means of collection), only that the debtor will receive the funds from her employer.

Three facts make the Allens' exemption claim even less persuasive than the claim in *Johnson*. First, in *Johnson* the debtors had money in their bank account on the petition date, so their argument that the wage garnishment exemption "followed" the wages was colorable; there was something to follow. The Allens, in contrast, had spent their wages by the petition date so there was no money for the exemption to follow.

Second, in *Johnson* the debtor attempted to use the wage garnishment exemption to protect 75% of his wages paid into his checking account, arguing that he was protecting no more than he could outside of bankruptcy. The Allens, on the other hand, want to use the exemption to shelter the 25% of Mr. Allen's wages that were *not exempt* from garnishment. Even under the faulty

---

[7] Black's Law Dictionary (10th ed.) defines garnishment as a "judicial proceeding in which a creditor (or potential creditor) asks the court to order a third party who is indebted to or is bailee for the debtor to turn over to the creditor any of the debtor's property (such as wages or bank accounts) held by that third party."

argument that the wage garnishment exemption "follows" the wages into the debtor's bank account, the exemption could not "follow" the 25% that the Allens seek to shelter from their creditors, because the 25% was never exempt.

Third, wages paid into a bank account remain vulnerable to garnishment because they are still held by a third party, albeit a different third party. The continued vulnerability makes the equitable case stronger for the exemption following the wages into the bank account. The Allens' preference claim is not vulnerable to garnishment,

Under *Johnson,* NMSA § 35-12-7 may not be used to exempt wages after they are paid to the debtor. Where, as here, the allegedly exempt property is a preference claim to recover properly garnished wages, an NMSA § 35-12-7 exemption claim has even less merit.

B.  The "Tools of the Trade" Exemption.

NMSA § 42-10-1 provides in part:

> . . . tools of the trade in the amount of fifteen hundred dollars ($1,500) . . . of every person supporting another person is exempt from receivers or trustees in bankruptcy or other insolvency proceedings, fines, attachment, execution or foreclosure by a judgment creditor.

The Allens claim a $750 exemption in their trailer as a "tool" of their concrete resurfacing "trade."

1.  The Purpose of the Exemption. In general, New Mexico's exemptions were enacted to "protect debtor's necessities and guard against familial destitution." *D'Avignon v. Graham*, 823 P.2d 929, 932 (N.M. App. 1991), citing *In re Spitz Bros.*, 45 P. 1122, 1123 (N.M. 1896). "The purpose of the tools of the trade exemption is to enable an artisan to retain tools . . . so he is not forced out of his trade." *In re Patterson*, 825 F.2d 1140, 1146 (7th Cir. 1987); *see also In re Weimann*, 2009 WL 383426, at *1 (Bankr. C.D. Ill.) (quoting *Patterson*); 4 Collier on Bankruptcy ¶ 522.09[6] (16th ed.) (the federal tools of the trade exemption "is designed to help preserve the

debtor's means of earning a living") (internal quotes omitted); *In re Nipper*, 243 B.R. 33, 37 (Bankr. E.D. Tenn. 1999) (the purpose of the tools of the trade exemption is to give a debtor the ability to continue his chosen means of earning income); *In re Graettinger*, 95 B.R. 632, 635 (Bankr. N.D. Iowa 1988); ("[e]nabling a debtor to maintain his personal dignity by emerging from bankruptcy with the ability to earn a living is a key purpose of the bankruptcy system and the exemptions allowed by state and federal law.").

2. <u>Ownership of the Trailer</u>. The trustee argued at the final hearing that J&K, not the Allens, owns the trailer. In support, the trustee got the Allens to admit that J&K does not rent or lease the trailer, even though the trailer is used solely for J&K's business. The trustee also points out that all the other assets of the concrete refinishing business are owned by J&K. The trustee's argument is not a bad one, but the only evidence in the record is that the Allens bought the trailer personally and never transferred it to J&K. The Court should not deny the claimed exemption based on the trustee's conjecture that the Allens do not own the trailer.

3. <u>Is the Trailer a "Tool" of the Allens' Concrete Refinishing Business?</u> Some cases limit the definition of "tool" to small items such as rakes, shovels, hammers, trowels, and the like. *See, e.g., Yparrea v. Roswell Production Credit Assoc. (In re Yparrea)*, 16 B.R. 33 (Bankr. D.N.M. 1981) (a large piece of farm equipment cannot be a tool of the trade); *Patterson*, 825 F.2d at 1146 (tools means personal hand tools of modest value, not machinery). Other cases have taken a more liberal view. In *Heape v. Citadel Bank of Independence (In re Heape)*, 886 F.2d 280, 283 (10th Cir. 1989), for example, the Tenth Circuit held that breeding stock is a tool of the trade under in § 522(f)(1)(B)(ii).[8]

---

[8] At the time it was § 522(f)(2)(B).

A line of cases has adopted the "use test" for determining whether a particular piece of personal property is a tool of a trade. In *Walkington v. Production Credit Assoc. (In re Walkington)*, 42 B.R. 67 (Bankr. W.D. Mich. 1984), for example, the bankruptcy court held:

> It is the view of this Court that Congress intended [§ 522(f)(1)(B)(ii)] to have a common sense interpretation on a case-by-case basis with the key inquiry focusing on the necessity of an item to the individual debtor's particular business or employment.
> . . .
> While cattle are not generally considered a "tool" in common parlance, nevertheless "the description of an object as a 'tool' necessarily implies a classification based upon that object's functional and utilitarian purpose in the hands of its owner or use." *In re Dubrock*, 5 B.R. 353 (Bankr. W.D. Ky. 1980) . . . . Congress did not place any limit on the kinds of property that may constitute a "tool" since to do so would unfairly discriminate against particular professions and undermine the fresh start policy that the Code seeks to promote.

*Id.* at 71-72. The *Heape* court agreed with *Walkington*. 886 F.2d at 282-83 (quoting the above excerpts and defining the use test as "an item which is necessary and used by the debtor in his business"). A number of other courts have adopted the use test. *See, e.g., Parrotte v. Sensenich (In re Parrotte),* 22 F.3d 472, 475 (2d Cir. 1994) (endorsing the use test and citing *Heape*); *Nazarene Federal Credit Union v. McNutt (In re McNutt)*, 87 B.R. 84, 87 (9th Cir. BAP 1988) (adopting the use test); *In re Gaydos*, 441 B.R. 102, 107 (Bankr. N.D. Ohio 2010) (same); *In re Bulger*, 91 B.R. 129, 131-32 (Bankr. M.D. Ala. 1988) (same); *In re Sowder*, 1987 WL 46799, at *2-*3 (D. Kan.) (same); *In re Larson*, 260 B.R. 174, 191-92 (Bankr. D. Colo. 2001); *In re Stewart*, 110 B.R. 11, 12 (Bankr. D. Id. 1989); *see also Creditthrift of America v. Dubrock (In re Dubrock)*, 5 B.R. 353, 355 (Bankr. W.D. Ky. 1980) ("a car is classified a tool of trade only if the occupation of its owner is uniquely dependent on its use").

The Court concludes that the use test is logical and fair. The Court predicts that the New Mexico appellate courts would adopt the use test to determine whether a particular item is a tool

of the trade. The New Mexico tools of the trade exemption is capped at $1500, which eliminates the danger that expensive machinery like trucks, tractors, combines, etc., would have unlimited exemptions if deemed to be tools of the trade.

Several courts applying the use test have held that trailers are tools of a trade. In *Weimann*, for example, the bankruptcy court held that under Illinois law a trailer, canoes, boats, life jackets, and oars were tools of the trade of the debtor, who operated a boat rental business.[9] 2009 WL 383426, at *1. In *In re Ackerman*, 1995 WL 916986, at *4 (Bankr. N.D. Iowa), the court held that a trailer used in the debtor's masonry business was a tool of the trade under the Iowa exemption statute.[10] Finally, in *In re Hively*, 358 B.R. 752, 753-54 (Bankr. C.D. Ill. 2007), the court held that a cargo trailer was a tool of the debtor's catering business.

The Court finds that under the use test the Allens' trailer could qualify as a tool of the concrete refinishing trade. It is used exclusively in J&K's concrete refinishing business. The testimony was that the business needs a trailer to haul tools, supplies, and materials. The Court finds that the trailer is necessary to the business.

4. <u>Is J&K's Business the Allens' "Trade" For Exemption Purposes</u>? The Court must also determine as a fact issue whether the concrete refinishing business is a trade of the Allens. *See, e.g., Cent. Nat'l Bank & Trust Co. of Enid, Okla. v. Liming (In re Liming)*, 797 F.2d 895, 902 (10th Cir. 1986) ("Whether an implement is used in a bankrupt's 'trade' is a fact question based

---

[9] The Illinois exemption statute provides that a "debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tool or the trade of the debtor" is "exempt from judgment, attachment, or distress for rent." 735 ILCS § 5/12-1001(d).

[10] "If the debtor is engaged in any profession or occupation other than farming, the proper implements, professional books, or tools of the trade of the debtor or a dependent of the debtor, not to exceed in value ten thousand dollars in the aggregate" may be held "exempt from execution." Iowa Code § 627.6(11).

-9-
Case 19-11843-t7    Doc 106    Filed 07/24/20    Entered 07/24/20 16:29:30 Page 9 of 11

on an individual's particular circumstances"); *Johnston v. Barney*, 842 F.2d 1221, 1222 (10th Cir. 1988) (same).

Clearly, Mr. Allen's work at FedEx is his main "trade," generating almost all of the household income. Some courts have held that when a debtor carries on multiple trades, the exemption can only be used for the primary occupation. *See, e.g., In re Zink*, 177 B.R. 713, 715 (Bankr. D. Kan. 1995); *Seel v. Wittman*, 173 B.R. 734, 736 (D. Kan. 1994); *In re Kieffer*, 279 B.R. 290, 294 (Bankr. D. Kan. 2002).[11]

Other courts have adopted a more lenient standard. In *In re Myers*, 56 B.R. 423 (Bankr. S.D. Iowa 1985), for example, the court, following a ruling from the Iowa supreme court, rejected the primary occupation test and held that under Iowa law a trade can be any occupation that contributes to the debtor's support. 56 B.R. at 426; *see also In re Bechtoldt*, 210 B.R. 599 (10th Cir. BAP 1997) (the court allowed an exemption for tools of debtor's "secondary" occupation).

The Court predicts that the New Mexico appellate courts would be fairly flexible in determining a debtor's trade and likely would allow a debtor to exempt tools for a side business, if the business contributed a reasonable amount to her income. However, the Court predicts that the New Mexico appellate courts would insist that the secondary trade contribute in a meaningful way to the debtor's support. Hobbies and insignificant side businesses would not qualify.

Mr. Allen's estimated monthly income from FedEx is $4,443.11, or $53,317 a year. Ms. Allen recently started working as a "brand ambassador" for Home Chef and apparently makes very little ($17 a month). The Allens' schedule I shows a monthly loss of about $200 from J&K, although they show slim earnings from J&K in their SOFA. Depending on which disclosures are

---

[11] The Kansas tools of the trade exemption exempts: "the ... instruments, tools, implements and equipment ... regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation." K.S.A. 60–2304(e).).

accurate, the Allens' concrete refinishing business either contributes about 4.5% of their income or *reduces* their income by about 4.5%. Either way, concrete refinishing cannot fairly be considered a "trade" of the Allens. They do not support themselves by concrete refinishing. Furthermore, they are not seeking to exempt J&K, so the trailer may not be necessary to the concrete refinishing business going forward. Finally, the most recent information (current monthly income) shows the $200 monthly loss. The court's overall conclusion based on the evidence is that for the Allens concrete refinishing is not a "trade" for which they may exempt tools.

### III. CONCLUSION

The Allens cannot use New Mexico's wage garnishment exemption to exempt a preference action, particularly one that seeks to recover non-exempt garnished wages. In addition, the Allens cannot exempt their trailer as a tool of the trade because concrete refinishing is not their trade. By separate order, the Court will sustain the trustee's objections to both.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 24, 2020

Copies to: counsel of record